## Charley, etc., v. Bolivar Borough

*Harry E. Cope*, for plaintiff.
*Clarence Hugus*, for defendant.

KEENAN, J., March 29, 1938.—This comes before us upon an affidavit of defense raising questions of law.

Plaintiff brought suit against defendant borough to recover damages caused to his truck and for the loss of a truck load of groceries when the ferry on the Conemaugh River connecting the Borough of Bolivar in Westmoreland County and the Village of Robinson in Indiana County capsized.

Plaintiff's statement sets forth that defendant borough built the ferry for the transportation of persons and vehicles for hire, and that, therefore, it is liable for the negligent operation of the said ferry.

The ferry was constructed probably at the instance of defendant borough but through W. P. A. funds sometime in the fall of 1936 when it was used because the Saint

Patrick's Day flood of that year had demolished the bridge at that point, thus making it necessary for people to travel about twenty miles further than ordinary to get from one side of the river to the other side.

There is no allegation that the construction of this ferry was done under an ordinance of defendant borough.

Defendant raises three separate questions of law. The first relates to the fact that the Fictitious Names Act of June 28, 1917, P. L. 645, had not been complied with by plaintiff; the second, to the fact that there was no list of the truck's cargo of groceries attached to the statement.

Both of these contentions may be disregarded, the first because the Fictitious Name Act does not apply, as we understand it, to actions of trespass; and the second, because a copy of the list of groceries was later attached to the statement of claim under an order of court.

The third reason is more important. It alleges that if defendant borough did build or cause to be built a ferry for the transportation of persons and vehicles for hire, and did contract and agree for hire to transport the truck of plaintiff, both were acts ultra vires to the authority of a municipal corporation and plaintiff, therefore, has no remedy against defendant.

Both counsel for plaintiff and defendant agree that there is no act of assembly authorizing the said borough to construct and maintain a ferry, but counsel for plaintiff contends that such power comes from the general powers conferred by statute upon a borough and also from common law, and on the latter point cites Trickett on Borough Law, p. 170, as follows:

"Therefore the safety of a dense population is to be guarded by the police power in a great city, even though in doing this, the power may be called into exercise within the dwellings, the lots, and the private ways of the citizens."

That is true in effect, the police power being rather broad and many things may be done under it without

express enactment, but in the instant case the facts do not disclose that it was necessary for the safety and protection of the borough itself, or of its citizens that a ferry be erected and maintained. At best it was a convenience for those having business in that community for there was another means of ingress and egress which could have been used, although at some inconvenience both as to time and distance.

A different situation might be created where a city or a borough rested solely upon an island in a stream or lake and the bridge or causeway connecting it with the mainland were destroyed there would be no other way for a long period of time until a new bridge or causeway could be constructed which might seriously endanger the health and safety of the citizens in the borough. In such a case the borough, acting under police power, might construct and operate a ferry and probably would be upheld by the courts.

But we are not dealing with a supposititious case, we have before us the facts, and in the absence of any special statutory authority we do not believe that defendant borough could construct and maintain a ferry without such action being ultra vires.

We know of no case in Pennsylvania, directly in point, but there are cases in other States which indicate that boroughs must have such legislative authority before they can proceed to operate a ferry.

In view of this discussion we are constrained to grant the motion of defendant borough.

### Decree

And now, to wit, March 29, 1938, it is ordered, adjudged, and decreed that the demurrer contained in the affidavit of defense raising questions of law be sustained and that judgment may be entered for defendant unless plaintiff files an amended statement of claim showing a good cause of action within 20 days.